IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

REBECCA CLEMENS,

                     Plaintiff,

v.

KILOLO KIJAKAZI,[1]
Acting Commissioner of Social Security,

                     Defendant.

OPINION AND ORDER

21-cv-249-slc

_____

Plaintiff Rebecca Clemens brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of an adverse decision of the acting commissioner of Social Security. Clemens, who had been found disabled by the Social Security Administration in 2014, challenges the acting commissioner's determination that her disability ended on June 1, 2018 because her medical condition improved such that she was able to perform substantial gainful activity. Clemens asks this court to remand her case for further proceedings because, she says, the administrative law judge (ALJ) who reviewed her claim at the administrative level erred in her evaluation of the medical opinions.[2] I disagree. Accordingly, I am affirming the acting commissioner's decision.

The following facts are drawn from the administrative record ("AR"):

## FACTS

Clemens, now 52, was found to be disabled on June 24, 2014, from a number of mental impairments. The agency noted, however, that medical improvement was possible, and it set a date of May 1, 2017 to reexamine whether continued benefits remained appropriate.

---

[1] The court has changed the caption to reflect Kilolo Kijakazi's appointment as acting commissioner.

[2] In addition, she raises a constitutional challenge, arguing that the ALJ lacked authority to act on her claim because 42 U.S.C. § 902(a)(3), which limits the President's authority to remove the commissioner of social security without cause, is unconstitutional. I previously considered and rejected this same constitutional challenge in *Klawitter v. Kijakazi*, 21-cv-216-slc, and I reject it here for the same reasons, without further discussion. *See id.*, 3/22/22 Op. and Ord., dkt. 21, at 12-13.

In 2017, the local disability agency began a continuing disability review of Clemens. In July 2018, the agency reached a determination that Clemens's condition had improved and that she was no longer disabled as of June 1, 2018. After losing her appeal, Clemens requested an administrative hearing, which was held on August 12, 2020.

On September 25, 2020, the ALJ issued a decision, finding that Clemens experienced medical improvement related to her ability to work on June 1, 2018. In doing so, the ALJ applied the commissioner's sequential evaluation process for determining whether a claimant continues to be disabled. *See* 20 C.F.R. § 404.1594(f). First, he found that Clemens had not engaged in substantial gainful activity (step one). Next, he found that since June 1, 2018, Clemens had a number of physical and mental impairments that were severe, meaning they imposed more than minimal limitations on Clemens' ability to perform basic work activities. As relevant here, the ALJ found that Clemens had the severe mental impairments of depressive disorder, bipolar disorder, anxiety disorder, attention deficit disorder, and post-traumatic stress disorder.[3]

The ALJ found, however, that none of these impairments, whether considered singly or in combination, met or medically equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (a.k.a. "the Listings") (step two). Specifically, the ALJ found that by June 1, 2018, Clemens' mental impairments imposed no more than moderate limitations in the four areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. This was a medical improvement related to Clemens' ability to work, because at the time she was found disabled in 2014, her mental impairments were of listing level severity (steps three through six).

---

[3] The ALJ also found that Clemens had a number of physical impairments, but Clemens does not challenge that aspect of the ALJ's decision.

2

The ALJ next assessed Clemens' residual functional capacity, finding that she could perform a limited range of work at the light exertional level (step seven).  As for mental limitations, the ALJ found that Clemens could

- have occasional interaction with co-workers and the public;
- can understand, remember, and carry out simple instructions;
- make simple work-related decisions;
- tolerate occasional changes in a routine work setting with no production rate pace, such as work on an assembly line.

Finally, relying on the testimony of a vocational expert who testified at the hearing, the ALJ found that Clemens was unable to perform any of her past relevant work, but could perform a significant number of jobs in the national economy, including cleaner/housekeeping and merchandise marker (step eight).  Therefore, the ALJ concluded that Clemens' disability ended on June 1, 2018, and she had not become disabled again since that date.

The Appeals Council declined to review the ALJ's decision, making that decision the final decision of the commissioner for purposes of judicial review.

OPINION

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A disability recipient may be found not to be entitled to receive benefits if there is "substantial evidence which demonstrates that (A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not

related to the individual's ability to work), and (B) the individual is now able to engage in substantial gainful activity." 42 U.S.C. § 423(f)(1).

In reviewing the ALJ's decision under 42 U.S.C. § 405(g), the question for the court is not whether it would reach the same decision the ALJ did, but whether the ALJ's decision is supported by "sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Stated differently, this court must determine whether the ALJ's findings are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. In addition, the ALJ must identify the evidence and build a "logical bridge" between that evidence and the ultimate determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

Clemens does not challenge the ALJ's findings at steps one through six of the sequential analysis for evaluating medical improvement. She maintains, however, that the ALJ erred in assessing her RFC at step seven, which in turn tainted the step eight finding that there are a substantial number of jobs in the national economy that Clemens can perform. Specifically, Clemens contends that the ALJ committed a number of errors with respect to the medical opinion evidence, which consisted of opinions from state agency consultants Frank Orosz and Jason Kocina, and one of Clemens's treating providers, Tim Rescigno, PA-C.

First, Clemens argues that the ALJ did not properly evaluate Rescigno's opinion, which appears in the administrative record as Exhibit 24F. AR 989-994. On September 23, 2019, Rescigno completed a Medical Source Statement indicating that he had seen Clemens approximately once a month since February 2016 for medication management. Assessing her ability to meet the mental demands of unskilled work, Rescigno checked the box marked "unable to meet competitive standards" for the following abilities:

- work in coordination with or in proximity to others without being unduly distracted;

- make simple work-related decisions;

4

- complete a normal workday and workweek without interruptions from psychologically based symptoms;

- perform at a consistent pace without an unreasonable number and length of rest periods;

- respond appropriately to changes in a routine work setting; deal with normal work stress; and

- be aware of normal hazards and take appropriate precautions.

He further indicated that Clemens would likely be absent an average of 4 days a month because of her impairments or treatment. Rescigno did not complete the section of the form that asked him to include medical or clinical findings to support his assessment. AR 991.

Clemens first argues that the ALJ "merely dismissed [Rescigno's] opinion without assessing it vis-a-vis the medical record." Br. in Supp., dkt. 17, at 19. This assertion is unfounded. After noting the limitations endorsed by Rescigno[4], the ALJ stated that she did not find the opinion persuasive, explaining that "there was minimal explanation and [the limitations] were not consistent with the minimal to moderate symptoms noted in the record as well as the claimant's activities of daily living." AR 29. Then, citing to Clemens' medical records, the ALJ noted that Clemens was repeatedly described as: having a normal mood and affect, with normal memory and concentration; able to follow along in dialogue without distraction or the need to repeat; having normal cognitive function; friendly, pleasant or cooperative and comfortable-appearing during exams; and having intact to fair insight and judgment. *Id*. The ALJ also noted that Clemens' treatment had been essentially routine or conservative in nature, with medications proving to be relatively effective in controlling her symptoms. *Id*.

---

[4]The ALJ did not know the name of the person who signed the form, finding the signature illegible. Nevertheless, it is plain that she accepted it as an opinion from one of plaintiff's treating providers at the Alliance Medical Group. AR 23.

5

Clemens disputes the ALJ's characterization of her medical records, noting that on several occasions, she endorsed a number of symptoms of depression and PTSD. However, as her own citations confirm, Clemens typically reported her symptoms as "moderate," at most. At other times, she even described them as "mild" and "manageable," just as the ALJ found. Furthermore, even if her symptoms tended to "wax and wane," as she argues in her brief, she points to no records showing any exacerbation of her symptoms after June 1, 2018 that was so severe as to render her incapable of performing work within the limitations identified in the ALJ's RFC. *See Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (remand for new RFC not warranted where plaintiff "does not identify medical evidence that would justify further restrictions").

Next, Clemens argues that remand is required because the ALJ did not take into account all the relevant regulatory factors for evaluating medical source opinions and may have erred by discounting Rescigno's opinion on the ground that he is not an "acceptable medical source." *See* SSR 06-3p (although physician's assistants are not technically deemed "acceptable medical sources" under SSA rules, ALJ should consider their opinions concerning impairment severity and functional effects). This argument is unpersuasive. First, the ALJ noted that the signature on the Medical Source Statement was illegible, so it is doubtful she was even aware that it was from a physician's assistant and not a physician.

In any case, it is plain from the ALJ's decision that she treated Rescigno's opinion as one offered by an acceptable medical source. She explained that the opinion was not persuasive because it was supported by "minimal explanation" and was inconsistent with Clemens' reported minimal to moderate symptoms as well as her activities of daily living, which included walking twice a day, doing crafts, handling finances, shopping, making meals, completing handwritten forms, taking care of things at home, and traveling to Florida on different occasions.

Second, let's assume, *arguendo*, that Clemens is correct that the ALJ should have applied the commissioner's "old" rules for evaluating medical source opinions, which arguably required

6

ALJs to discuss factors such as the source's specialty and how long the source had been treating the claimant, *compare* 20 C.F.R. § 404.1527(d)(2) (listing factors) *with* § 404.1520c(b), (c) (setting forth same factors but requiring ALJ to discuss only consistency and supportability).[5] Clemens offers no reason to think that the outcome would be any different if the ALJ had done so. For example, Clemens offers no information about Rescigno's specialty, the length of their treatment relationship, or any other information about the § 404.1527(d)(2) factors that she criticizes the ALJ for failing to consider. In short, Clemens makes much ado about nothing. *See Keys v. Barnhart*, 347 F.3d 990, 994 (7th Cir. 2003) (harmless error applies to judicial review of administrative decisions).

Next, Clemens criticizes the ALJ's approach to the opinions from the state agency consultants, Orosz and Kocina. Orosz reviewed the record on July 5, 2018 and concluded that medical improvement had occurred, finding that Clemens had only "moderate" limitations in the functional areas of interacting with others and adapting or managing herself, and "mild" limitations in understanding, remembering or applying information and concentrating, persisting and maintaining pace. AR 632. Overall, he found, although Clemens' impairments were chronic and severe, they did not prevent her from performing "a range of at least unskilled work." AR 618. The ALJ found Orosz's opinion "generally persuasive," finding it consistent with the evidence in the record regarding Clemens' mental functioning. AR 23.

Clemens argues that the ALJ's RFC finding does not account for Orosz's findings, made on the "Summary Conclusions" portion of the Mental Residual Functional Capacity worksheet, that Clemens was moderately limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and to work with or around others without being distracted by them. Br. in Supp., dkt. 17, at 17-18 (citing AR 616).

---

[5] The new rules went into effect on March 27, 2017 and apply to claims filed on or after that date.

I disagree. Although the Seventh Circuit has said that an ALJ must consider whether the consultant's narrative RFC assessment "adequately encapsulate[d] and translate[d]" the checklist findings, *see Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015), it has also noted that "[a] 'moderate limitation' is defined by regulation to mean that functioning in that area is 'fair' . . . it does not mean 'bad' or 'inadequate.'" *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1). Here, Clemens does not suggest how Orosz (or the ALJ) could have "encapsulated" her moderate limitations in maintaining attendance and punctuality into narrative form other than by finding that she either could or could not meet the demands of competitive employment. Accordingly, the ALJ did not err by relying on Orosz's ultimate conclusion that Clemens remained capable of performing at least unskilled work. As for Orosz's finding that Clemens was moderately limited in her ability to work around others, the ALJ adequately accounted for this limitation by finding that she could tolerate only occasional interaction with co-workers and the public.

Finally, Clemens argues that the ALJ erred by failing to account for the following limitations suggested by state agency consultant Kocina in the narrative portion of his RFC assessment:

- Clemens "would work at a slightly slower pace but should be able to reorient to compl[e]te her [assigned] simple tasks within acceptable standards;" and

- "She would be suited for work that has minimal interaction with the public."

AR 961. Once again, Clemens is engaging in pointless nitpicking. Although the ALJ did not adopt Kocina's language verbatim, she found that Clemens was limited to working in a routine work setting with no production rate pace, such as assembly work, with only occasional changes. This is more than adequate to account for Kocina's opinion that Clemens would work at a "slightly slower pace." As for interacting with the public, the vocational expert who testified at

Clemens' administrative hearing said the same jobs would be available even if Clemens could tolerate *no* interaction with the public. AR 64-65. So, even if the ALJ erred, it was harmless.

In sum, I find no error in the manner in which the ALJ assessed the various medical opinions. Clemens raises no other substantive challenges to the ALJ's decision. Accordingly, I affirm the decision.

## ORDER

IT IS ORDERED that the decision of defendant Kilolo Kijakazi, Acting Commissioner of Social Security, finding that plaintiff Rebecca Clemens' disability ended on June 1, 2018, is AFFIRMED. The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 1st day of June, 2022.

BY THE COURT:

/s/

_____
STEPHEN L. CROCKER
Magistrate Judge